New Jersey Department of Labor,
Workmen's Compensation Bureau.

HYMAN STRAITMAN, PETITIONER, v. J. E. STEVENSON
& CO., RESPONDENT.

Decided November 28, 1941.

For the petitioner, *Joseph A. Fuerstman.*

For the respondent, *James J. Skeffington.*

\*        \*        \*        \*        \*        \*        \*

The petitioner alleges that on July 14th, 1941, while employed by the respondent he was standing on a heap of baskets about four feet from the ground, when same gave way and he fell to the sidewalk striking his back.

It was agreed, however, between the parties that the question of liability should be tried before the question of disability, inasmuch as there was a grave question as to whether or not the petitioner was an employe within the meaning of the Workmen's Compensation Act.

The petitioner testified that he had been a jobbing peddler and worked in and about the market for the past thirty some odd years, and that about March 14 or 15th, 1941, he was talking with Mr. Ray Hastings, a member of the firm of J. E. Stevenson & Co., and that he made arrangements with Mr. Hastings whereby he (Mr. Straitman) would go to New York with his truck and purchase merchandise in New York and return, displaying it and selling it at the premises of

J. E. Stevenson & Co., and that he and J. E. Stevenson & Co. would split the profits.

He stated Mr. Hastings told him he would think about it a couple of weeks and let him know, and that a couple of weeks later he began to work in the manner described, *i. e.*, he would be allowed $2 which was to cover the tunnel fare and lunch money, and in return the petitioner was to supply his own truck and maintain it, and then he was to purchase, he testified, such merchandise as was deemed advisable on the credit of J. E. Stevenson & Co., cart it back to the premises of J. E. Stevenson & Co., and then attempt to sell same.

He testified that the salesmen of J. E. Stevenson & Co. sold some of the produce which he brought back to their establishment, and that he would give the bookkeeper the charge slip and every Saturday he would receive a settlement for one-half of the profit from the transaction. He also admitted he was paid five cents per package for cartage charge on any package or bundle which he took from New York for the J. E. Stevenson & Co., which was outside of this profit sharing arrangement.

The petitioner in support of his contention entered into evidence a series of slips which were in the handwriting of the bookkeeper, Mr. Summers, of the J. E. Stevenson & Co.

He testified that he frequently had to do little odd jobs such as going for ice for "icing-down" the merchandise, and occasionally going to the warehouse, but admitted quite frankly that he received no compensation from J. E. Stevenson & Co. for any activities that he performed, and received nothing outside of the profit sharing arrangement, plus the usual five cents cartage charge made on each package that was carted to Newark for J. E. Stevenson & Co. outside of the merchandise which was secured on a share and share alike arrangement.

The petitioner testified that on July 14th, 1941, while attempting to get into his truck to take some produce off same he stepped up on some baskets of beans, which gave way and he fell to the ground injuring his back.

He further testified that it was his practice before making purchases in New York to call up Mr. Hastings, or someone

connected with J. E. Stevenson & Co. to ascertain what merchandise they had on the premises, so as not to purchase merchandise which would duplicate that which they already had.

He admitted that he did not have any Social Security number and that the only compensation he received was one-half the profit of the sale of the merchandise after the costs of same had been deducted therefrom.

The petitioner also testified that after the accident he was under the care of Dr. Solk for three or four weeks and resumed working about five weeks later.

His present complaints are that he still feels weak; his back hurts him; he cannot sit for any length of time without difficulty; if he walks a great deal he has a pain in his back. He stated that when he gets up from a sitting position he feels dizzy; that he is nervous and feels pain.

He testified that when he did not go back under this old arrangement with Mr. Hastings he subsequently made a similar one with another produce merchant and is now engaged at that place.

Mr. Hastings took the stand and testified that Mr. Straitman approached him about March 15th, 1941, and suggested that they enter an arrangement whereby the company would allow him $2 to cover the cost of tunnel and give him "a bit of breakfast," and that he in turn would supply the truck and gasoline, and that he would purchase merchandise in New York at the New York Commission Market, cart it to their premises and there assist in the disposition and sale of same, and he to receive a 50% share of the profits made after the cost of same had been deducted; that it was also their practice to permit Mr. Straitman to cart produce from New York to their premises and allow him five cents per package as carrier. This was for produce which they themselves would order independent and apart from the produce which Mr. Straitman would order and upon which he received a share of the profits.

Mr. Hastings stated that the petitioner never was an employee of J. E. Stevenson & Co.; that he had no Social Security number, and that he had only this share of the profit

arrangement in connection with the produce that he brought from New York, and in addition was paid the usual cartage charge for produce which J. E. Stevenson & Co. would order themselves. He stated it was quite possible that Mr. Straitman did go to the warehouse occasionally for produce, or to secure ice, but that if he did this it was voluntary, and because he sought their good will and was in nowise compulsory, having nothing to do with their agreement which was simply "a share the profit arrangement."

Mr. Summers, the bookkeeper, was called to the stand and he explained in detail the slips that had been entered into evidence by the petitioner and checked them against his book which showed clearly that the petitioner received a 50% share of the profits on the produce which he brought over from New York for the purpose of selling, and also showed that if he brought other packages independent of this arrangement he was allowed the usual cartage charge of five cents per package. He also testified that at the end of each week the accounts were reckoned and the petitioner given his share of the profits. This occurred on a Saturday night. He testified the regular employees of J. E. Stevenson & Co. were paid on Friday nights.

He showed from the records that the petitioner had no Social Security number and was not treated in any manner as the regular employees of J. E. Stevenson & Co.

After having examined the records in this case, and considering the testimony adduced before me on the question of liability, I am satisfied that the petitioner entered into an arrangement in the nature of a joint venture and received 50% of the profits on a share and share alike arrangement. Further, that the evidence clearly shows that the relationship of master and servant did not exist as between J. E. Stevenson & Co. and the petitioner at the time this accident occurred.

It is, accordingly, * * * ordered that the petition be and the same is hereby dismissed.

JOHN C. WEGNER,
*Deputy Commissioner.*